IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



TIMOTHY G. PEGRAM,
         Plaintiff,
v.

PRUDENTIAL INSURANCE CO.,
         Defendant.

Civil Action Number 3:08cv116

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff's Complaint to recover disability benefits under the James River Air Conditioning Company's welfare benefit plan, which is governed by Section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Consistent with the manner in which disputes are handled under ERISA, the parties have agreed to resolve the dispute by cross-motions for summary judgment. Accordingly, before the Court are the parties's Motions (Doc. Nos. 19 and 24). For the reasons below, the Court DENIES Plaintiff's Motion, and GRANTS Defendant's Cross-Motion for Summary Judgment.

### I. BACKGROUND[1]

Plaintiff, Timothy G. Pegram, was hired as a sheet metal mechanic with James River Air Conditioning Company ("James River Air") on December 6, 2004. (A.R. 0659, 0677.) As a sheet metal mechanic, Pegram was required to exert a medium amount of physical effort on the job, including frequently lifting 10 to 25 pounds and occasionly up to 50 pounds. (A.R. 0659.) Prior to his employment, Pegram took a physical exam to

---

[1] Citation to the Administrative Record is noted as "A.R.", or "S.A.R." for the Supplemental Administrative Record.

determine whether he was capable of performing the job requirements. (A.R. 0527–28.) The exam's report stated his back/spine range of motion was normal, as well as his upper and lower extremity strength. (A.R. 0527.) Accordingly, Pegram was found capable of performing the essential functions of his job. (A.R. 0528.)

On February 2, 2006, Pegram left work due to back pain. (A.R. 0677.) He submitted a claim for Long-Term Disability benefits on February 8th, stating he was unable to work in his regular occupation due to "back pain" caused by a "bulged disc [and] deteriorating disc [in his] lower back." (A.R. 0674–76.) This claim was accompanied by a signed Attending Physician Statement ("APS") from Dr. Gurpal Bhuller stating the same. (A.R. 0671–73.) In response to his disability claim, a review was conducted of the applicable benefit plan and Pegram's medical history.

As an employee of James River Air, Pegram was a plan participant in the company's Short Term and Long Term Disability programs. These programs were part of James River Air's welfare benefits plan ("the Benefits Plan"). Pursuant to the Benefits Plan, James River Air serves as Plan Administrator, and The Prudential Insurance Company of America ("Prudential") is the Claims Administrator. (A.R. 0070–71.) Upon initial review of Pegram's claim, Short Term Disability ("STD") benefits were granted. (A.R. 0169–70.) The period for which benefits were paid ran from March 4, 2006 through June 30, 2006. (Id.; A.R. 0163–64.) However, upon further investigation, Prudential determined that Pegram was treated during the pre-existing time period and therefore his STD benefits were terminated, and Long Term Disability ("LTD") benefits were denied. (A.R. 0158.) Specifically, Prudential sent Pegram a July 11, 2006 Denial Letter ("July Letter") stating the requirements necessary to receive STD and LTD

2

benefits, the Benefit Plan's exclusions, and the particular reason Pegram's claims were denied.[2] (A.R. 0157–59.) The July Letter states, in pertinent part:

> Your plan does not cover a disability which:
>
> - begins within 12 months of the date coverage under the plan becomes effective; and
>
> - is due to a pre-existing condition.
>
> You have a pre-existing condition if:
>
> - you received medical treatment, consultation, care or services including diagnostic measures, took prescribed drugs or medications, or followed treatment recommendation the 3 [three] months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available; or
>
> - you had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 [three] months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available.
>
> The information in file indicates that your last day at work was February 2, 2006. Your effective date of coverage ... was March 1, 2005 ... [yielding a pre-existing exclusion] period of December 1, 2004 through February 28, 2005.
>
> After a review of the medical information in file, it was confirmed that you had been seen by Dr. Boayke at Healthcare Plus on December 24, 2004 for back pain secondary to a [December 17, 2004] fall and were prescribed hydrocodone for your back pain. Since you were treated for your condition during the three month period preceding your date of coverage, and you went out of work within the first year of being covered for STD and LTD benefits, the pre-existing condition exclusion applies to your claim ..., and we are denying your claim for STD and LTD benefits.
>
> (Id.)

---

[2] The information regarding the types of disabilities covered under the Benefits Plan and the definition of a pre-existing condition was also made available to Pegram and other plan participants at the beginning of the coverage period. (Lubno Decl., S.A.R. 0001–02; id. at 0005–07.)

3

Moreover, as Pegram's claim for disability benefits was denied, Prudential requested a refund of benefits paid in the amount of $8,712.00. (A.R. 139.)

Pegram appealed the denial of his disability claim via Prudential's internal appeals process. In an April 4, 2007 Letter ("April Letter"), Prudential's determination was upheld by the Appeals Review Unit. (A.R. 137–139.) Among other details, the April Letter noted the revised 90-day pre-existing exclusion period, which was originally incorrectly calculated, runs from January 1, 2005 to March 31, 2005. (A.R. 0139.) The April Letter further identified Pegram's medical history as a reason for the denial. (Id.) This medical history includes:

- Pegram's epidural steroid injections in 2000 by Dr. Saraiya (A.R. 0221);

- Pegram's December 24, 2004 visit to Dr. Boakye at Healthcare Plus for back pain secondary to a fall, where his back pain was described as "severe," and Pegram was prescribed Vicodin, Skelaxin, and hot pads (A.R. 0533, 0535);

- Pegram's March 11, 2005 visit to Dr. Koduri, a Psychiatrist and Pain Management Specialist, who made a handwritten note stating Pegram "still has mood and back problems" (A.R. 0447);

- Pegram's May 13, 2005 appointment with Dr. Koduri, who once again noted Pegram was having "back pain," and that an x-ray was performed for his "back problem" (A.R. 0446);

- Dr. Koduri's July 22, 2005 note stating Pegram needs a magnetic resonance imaging (MRI) of his back (A.R. 0445);

- Pegram's August 12, 2005 visit with Dr. Bhuller, who noted Pegram was "complaining of pain in his back," and that this pain "has been going on for the last 3 to 4 years." During this visit, Pegram stated he was taking Vicodin, Naproxin, and Xanax. Bhuller also noted Pegram's pain is "mainly in the lower back" and goes "down the upper aspects of both thighs posteriorly" (A.R. 0220–21);

- Pegram's September 16, 2005 visit with Dr. Bhuller. Bhuller noted Pegram was "still having significant pain in the back." Pegram postponed surgery for financial reasons (A.R. 0219);

- Treatment by Dr. Koduri on October 28, 2005 where the doctor noted Pegram's continuing back pain, and noted he needed an MRI and surgery (A.R. 0444); and

- Pegram's subsequent surgery on February 21, 2006 for microdisectomy L4–5 and L5–S1 with Dr. Kalluri (A.R. 0589).

The April Letter went on to summarize the Appeals Unit's determination as such:

> [Dr. Koduri's] note dated March 11, 2005, which is during the pre-existing time frame, noted that Mr. Pegram 'still has mood and back problems.' This along with the follow-up examinations show a continuous problem with back pain and ultimately [sic] had surgery on February 21, 2006. Dr. Bhuller [an Orthopedist] also noted Mr. Pegram has had back pain for three to four years. We have a note of epidural steroid injections in 2000, with no further information provided until 2005. All this information supports the back pain was present during the time of January 1, 2005 through March 31, 2005 that eventually resulted in a surgical procedure. Mr. Pegram's condition is pre-existing. As such, the decision to terminate his claim for STD benefits and disallow LTD benefits was appropriate and is therefore, being upheld on first reconsideration.

(A.R. 0139.)

After exhausting all internal appeals, Pegram filed the entitled action against Prudential to recover disability benefits. Plaintiff's Complaint asserts three claims: (1) Prudential's denial of disability benefits was arbitrary, capricious, not made in good faith, unsupported by substantial evidence, and made in violation of the Benefits Plan's terms and conditions; (2) Prudential failed to provide adequate written notice of denial setting forth the specific reasons for such denial and any evidence necessary to establish the plan participant's claim for benefits; and (3) Prudential failed to provide Pegram with the opportunity for a full and fair review of his claim, in violation of 29 U.S.C. § 1133. (Compl. ¶¶ 22–32.) Accordingly, the parties move for summary judgment to determine whether Prudential's disability determination was appropriate in light of the applicable standard of review.

5

## II. LEGAL STANDARDS

### A. Cross-Motions for Summary Judgment

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). When faced with cross-motions for summary judgment, the Court must review "each motion separately on its own merits." Republic Western Ins. Co. v. Williams, 212 Fed. Appx. 235, 237 (4th Cir. 2007). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotations marks and citations omitted). In its determination, courts look to the affidavits or other specific facts pled to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where no genuine issue of material fact exists, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted). However, summary judgment should not be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Mere unsupported speculation is not sufficient if the undisputed evidence indicates the other party should win as a matter of law. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008).

### B. Standard of Review for ERISA Claims

The Employment Retirement Income Security Act allows participants of welfare benefits plans to enforce the terms of their plan through civil litigation. See 29 U.S.C.A.

§ 1132(a)(3). Specifically, ERISA allows plan participants to recover benefits from, enforce the terms of, and clarify their future rights under a welfare benefit plan by instituting a civil proceeding. See id. § 1132(a)(1)(B). As a threshold matter, a Court faced with such a proceeding must determine the applicable standard of review.

Pursuant to the Supreme Court's direction, "a denial of benefits challenged under ERISA is to be reviewed under a *de novo* standard of review unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 109 S. Ct. 948, 956 (1989). Where discretion is conferred, an administrator's exercise of such power is not overturned except to prevent an abuse of discretion. Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 341 (4th Cir. 2000). Therefore, an administrator's decision will not be disturbed if reasonable, even if the court would have reached a different conclusion. Id.

In determining whether an administrator's exercise of discretion was reasonable, a court may consider, but is not limited to, such factors as: "(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have." Id. at 342–43.

While the abuse of discretion standard is appropriate if the plan confers discretionary power on the administrator, the Court must first review the plan *de novo* to determine whether the language confers such discretion. Id. The parameters of the Court's review are the ERISA plan documents themselves, including any Summary Plan Description ("SPD") provided to the plan participants. See Pierce v. Security Trust Life Ins. Co., 979 F.2d 23, 26–28 (4th Cir. 1992) (noting the SPD is a binding document required under ERISA to inform plan participants of activities that may result in disqualification, ineligibility, or denial of their benefits, and of their rights and obligations under ERISA). In the present case, the James River Air SPD states:

> The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

(A.R. 0071.)

Further, a sworn declaration by Lisa Lubno, the Human Resources Director for James River Air, states the SPD was used by James River during the 2005–06 Plan years, and was distributed to all plan "participants and beneficiaries during that period pursuant to applicable ERISA statutory and regulatory provisions." (S.A.R. 0001.) Accordingly, this Court holds the SPD's language clearly provides Prudential with discretionary authority to determine eligibility for benefits and construe the terms of the plan; therefore, an abuse of discretion standard of review applies to Prudential's exercise of discretion.[3]

---

[3] Plaintiff argues the appropriate standard of review is *de novo* because the plan's language does not confer discretionary power on Prudential to determine benefits. (Pl.'s Mot. for Summ. J. 1, 15.) Specifically, Plaintiff notes the plan "requires Prudential to pay benefits to an employee who becomes disabled . . . [and] requires the employee to provide satisfactory proof of disability. These terms do not confer discretion upon Prudential that would entitle it to a deferential review based upon any applicable plan

8

## II. ANALYSIS

The parties have stipulated to the Administrative Record in this matter, which was filed on November 26, 2008. This record contains the documents maintained and utilized by Prudential in reviewing Plaintiff's claim for disability benefits, and further includes a Supplemental Record containing a copy of the Summary Plan Description that was distributed to plan participants.[4] (See Def.'s Notice of Filing of Admin. Record 1.) Although the parties maintain different interpretations of the documents filed, and derive inconsistent conclusions based on the facts culled in the record, there is no genuine dispute as to any material fact. Accordingly, the primary issue before the Court is a legal one, namely, whether Prudential's decision to deny Pegram disability benefits based on a pre-existing condition was an abuse of discretion.

### A. Pegram's Motion for Summary Judgment

Plaintiff's Motion for Summary Judgment presents two intertwined issues: (1) whether Prudential's denial of Pegram's disability claim based upon a finding that a pre-existing condition existed meets the standard set out in Quesinberry v. Life Ins. Co. of North Am., 987 F.2d 1017, 1028 (4th Cir. 1993), and (2) whether Prudential's

---

language contained in the STD plan." (Id. at 15.) While Plaintiff is correct in noting that this language, if indeed it is contained in the STD plan, does not provide Prudential with discretionary authority to determine eligibility for benefits or construe the terms of the plan, these are not the relevant provisions. Rather, the section of the SPD entitled "Plan Benefits Provided By", explicitly provides the applicable discretion. (See A.R. 0071.)

[4] Plaintiff, in a March 23, 2009 Motion, requested this Court supplement the record with information pertinent to Pegram's employment after he left James River Air. (See Motion to Supplement Record, Doc. No. 26.) In a May 11, 2009 Order, this Court denied Plaintiff's request as the Administrative Record only contains the documents relied upon by the Claims Administrator in making its disability determination.

determination of a pre-existing condition evidences an abuse of discretion. These contentions will be addressed in turn.

### 1. Quesinberry or Reliance Standard Test

Plaintiff's first argument contends the Court must review the Administrative Record and Prudential's determination of a pre-existing condition based upon the test set forth in Quesinberry, which adopted the two pronged test derived from Adkins v. Reliance Std. Life Ins. Co., 917 F.2d 794 (4th Cir. 1990). This test, known as the Reliance test, prohibits an insurance carrier from denying accidental injury or death coverage unless it proves: (1) there is a pre-existing disease, pre-disposition, or susceptibility to injury, and (2) this pre-existing condition substantially contributed to the disability or loss of the claimant. 917 F.2d at 795. However, the use of this test and its "substantially contributed to" language is not applicable to the disability policy at hand; rather, the "test" Prudential was required to use, and in fact did use, to determine whether Pegram had a pre-existing condition was the definition set out in the plan documents. See White v. Provident Life & Accident Ins. Co., 114 F.3d 26, 28 (4th Cir. 1997) (noting that ERISA demands adherence to the clear language of employee benefit plans when interpreting coverage under the plan); see also James River Air's Benefit Plan Description, A.R. 0051 (identifying two definitions of a pre-existing condition). Plaintiff's contrary contentions fail to adequately account for the purpose of the Reliance test and the manner in which it is used in accidental insurance policies.

Both the Quesinberry and Reliance Standard cases involved the interpretation of insurance policies providing coverage for death or total disability due to an accident. This test was derived to avoid the unique situation that arises with accident policies

where, without the standard, coverage might only be available in extreme situations. See Hall v. Metro Life Ins. Co., 259 Fed. Appx. 589, 591 (4th Cir. 2007) (noting the Reliance test was derived to avoid coverage only being provided in facts equivalent to "a truck dropping from the skies, striking squarely and killing instantly a perfectly fit human specimen clutching a just-issued physician's clean bill of health.") Accordingly, this test has not been used, as is attempted here, to define the type of pre-existing conditions that can result in denial of disability coverage under ERISA. This Court, therefore, will not do so either, but rather will look to the plan language that excludes coverage for "a disability which is due to a pre-existing condition," as defined under the policy. (A.R. 0051.)

### 2. Prudential's Denial of Disability Benefits

When reviewing an administrator's decision to deny employee benefits, the court's review is limited to the body of evidence before the administrator at the time the claim was rejected. Donnell v. Metropolitan Life Ins. Co., 165 Fed. Appx. 288, 294 (4th Cir. 2006) (citing Elliott v. Sara Lee Corp., 190 F.3d 601, 608–09 (4th Cir. 1999)). Under the abuse of discretion standard, "the administrator's decision will not be disturbed if it is the result of a deliberate, principled reasoning process[,] and if it is supported by substantial evidence." Elliott, 190 F.3d at 605 (internal citations omitted). This evidence "must be more than a mere scintilla . . . but may be somewhat less than a preponderance." LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 208 (4th Cir. 1984). Merely deriving a different result based on conflicting medical reports does not amount to an abuse of discretion, if such result is reasonable." Elliott, 190 F.3d at 606. Using this abuse of discretion standard, Prudential's denial of benefits will be upheld if

reasonable and a result of a deliberate, principled reasoning process that is supported by substantial evidence. A review of the Record in this case indicates that Prudential's decision to deny Pegram's claim was reasonable, and amply supported by the Record.

### a. Existence of Back Pain During Exclusionary Period

According to the James River Air Benefits Plan, a disability is excluded if it "begins within 12 months of the date [] coverage under the plan becomes effective; and is due to a pre-existing condition." (A.R. 0051.) A pre-existing condition exists if, within the three months prior to the effective date of coverage or the date an increase in benefits would otherwise be available:

1. You received medical treatment, consultation, care or services including diagnostic measures, took prescribed drugs or medications, or followed treatment recommendation . . . ; or

2. You had symptoms for which an ordinarily prudent person would have consulted a healthcare provider . . . .

(Id.)

The applicable pre-existing condition exclusion period is January 1, 2005 through March 31, 2005. During this time, Pegram visited Dr. Koduri, a Psychiatrist and Pain Management Specialist, who noted that Pegram "still had mood and back pain." (A.R. 0139.) Dr. Koduri's note supports Prudential's conclusion that Pegram was having back pain during the applicable exclusion period. This view is further substantiated by Pegram's medical history, claims of back pain, and progression of symptoms and medical care.

On December 24, 2004, one week prior to the start of the exclusionary period, Pegram visited Dr. Boakye, after he fell at home and hurt his back. His back pain was

diagnosed as "severe," and Pegram was prescribed Vicodin, Skelaxin, and hot pads. Though Plaintiff claims no medical appointments were made specifically for back pain from January 1, 2005 through March 31, 2005, it is clear that Pegram suffered from back pain during this period, visited a pain specialist during this time, and continued to see the pain specialist for back pain after the exclusionary period. This medical history fully supports Prudential's determination that severe back pain was present during the exclusionary period. During these visits, Pegram confessed to having back pain for three to four years, and noted that he was currently taking Vicodin, a drug he was prescribed one week prior to the exclusionary period. These statements further corroborated Prudential's determination that back pain persisted from at least December 2004 up until his February 2006 back surgery. Accordingly, this Court finds Prudential's determination that Pegram had severe back pain during the exclusionary period was reasoned and rational, supported by substantial evidence, and therefore not an abuse of discretion. The Court next looks to determine whether Pegram's back pain meets the definition of a pre-existing condition under the Benefits Plan, thus substantiating Prudential's denial of benefits.

      b. <u>Prudential's Determination that a Pre-Existing Condition Existed</u>

Pursuant to the Benefits Plan's language, a pre-existing condition exists if a plan participant: (1) received medical treatment or consultation, or followed medical treatment recommendations within the exclusionary period, or (2) had symptoms for which an ordinarily prudent person would have consulted a healthcare provider for

13

during the exclusionary period. (A.R. 0036). Though Pegram will likely fit into both definitions, of particular applicability is the second definition.

As noted above, Pegram suffered back pain during the exclusionary period. Dr. Koduri's note, written during this exclusionary period, states Pegram "still has mood and back problems." Nevertheless, Pegram did not visit the doctor during this period. The fact that Pegram was "still" in pain, but did not go to the doctor substantiates Prudential's determination that an ordinarily prudent person would have consulted a healthcare provider during the exclusionary period. Accordingly, Prudential's conclusion that Pegram's back problems were a pre-existing condition is reasonable and not an abuse of discretion.

Plaintiff counters by stating the definition of a pre-existing condition under the plan language is ambiguous, and any ambiguity should be construed against Prudential. (Pl.'s Mot. for Summ. J. 20.) Specifically, Plaintiff states the plan does not define the terms "condition" or "symptom," and therefore these terms should be narrowly read to exclude the "subjective undiagnosed claim of 'back pain' [as] a symptom of a prolapsed disc or that a visit to an outpatient facility constituted medical treatment when the diagnosis was not related to the nature of the disability." (Id.) Further, Plaintiff argues, relying on earlier assertions that Quesinberry is applicable, that Pegram's claim of back pain made to his psychiatrist does not establish that Dr. Koduri treated Pegram for this condition, or that his back pain was related to a later diagnosis of degenerative disc. (Id.) However, this Court finds no ambiguity in the terms "condition" or "symptom," and further finds it unquestionable that "back pain" would be a symptom of prolapsed degenerative disc. (Id. at 26.) Additionally, Pegram's progression of treatment for back

pain supports Prudential's conclusion that he had a long history of back pain that ultimately resulted in surgery for the prolapsed disc. Moreover, Plaintiff's arguments suggesting the December 2004 doctor's visit diagnosing Pegram with a strained back somehow precludes any subsequent determination that back pain in early 2005 was a symptom of a larger spine condition is not persuasive. As Plaintiff repeatedly notes in his pleadings, the 2004 visit was related to a December fall, and all necessary treatment was prescribed and completed in 2004. (Pl.'s Mot. Summ. J. 4.) Therefore, the continued existence of pain in January – March 2005 would cause a reasonable person to challenge the diagnosis or at least return to the doctor for further testing and treatment. Accordingly, the Court finds Prudential did not abuse its discretion in determining the same.

c. Prudential's Denial of Disability Benefits

Prudential's final step in determining whether a claim can be denied based on a pre-existing condition requires the disability to have begun within twelve (12) months from the date coverage began, and be a result of a pre-existing condition. (A.R. 0051.) As this Court has determined Pegram's claimed disability is the result of a pre-existing condition, and because he left work on disability on February 2, 2006, within twelve months of April 1, 2005, the date his coverage became effective, Prudential did not abuse its discretion in denying Pegram's disability claim. Accordingly, Plaintiff's Motion for Summary Judgment is DENIED. Further, though not argued in Plaintiff's Motion for Summary Judgment, the Court finds Prudential provided adequate written notice of the denial of Pegram's claim for benefits, and Prudential's internal appeals process

allowed Pegram to have a full and fair review of his claim. Accordingly, this Court finds no merit to Plaintiff's remaining two claims in the Complaint.

### B. Prudential's Cross-Motion for Summary Judgment

Prudential's Motion for Summary Judgment rests on two alternative theories: (1) the company's decision to deny Pegram's disability benefits was not an abuse of discretion and is supported by substantial evidence from the Record, and (2) alternatively, Pegram is barred from claiming that he is disabled from work under the doctrine of judicial estoppel because he filed a document with the United States Bankruptcy Court for the Eastern District of Virginia asserting he was working as a sheet metal mechanic shortly after filing the claim in this matter. (Def.'s Mot. for Summ. J. 1–3.) Though each Motion for Summary Judgment should be reviewed separately and on its own merits, because Prudential's first claim is the same analysis the Court utilized in denying Plaintiff's Motion, the Court will rest on this analysis in GRANTING Defendant's Motion for Summary Judgment. Further, as this Court GRANTS Defendant's Motion on the merits, the Court need not address Prudential's judicial estoppel argument.

## III. CONCLUSION

For the reasons above, this Court DENIES Plaintiff's Motion for Summary Judgment, and GRANTS Defendant's Cross-Motion for Summary Judgment.

It is SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 2nd day of July 2009